## Case No. 12,950.

### In re SLOCUM et al.[1]

Circuit Court, D. Vermont. Dec. 16, 1879.[2]

BANKRUPTCY—PARTNERSHIP—CREDITORS.

---

## Case No. 12,951.

### In re SLOCUM et al.[1]

District Court, D. Vermont. Oct. 4, 1879.[3]

BANKRUPTCY OF PARTNERSHIP—RIGHTS OF FIRM CREDITORS IN INDIVIDUAL ESTATE.

[In an ineffectual attempt to collect firm claims, only a small sum was realized, which was not sufficient to cover the expenses of the suits brought, and these expenses were more than sufficient to exhaust the firm assets; but if they were included in the general expenses of the bankruptcy, and paid from the assets of both firm and individual estates, there would remain a small amount of firm assets for distribution to the firm creditors. *Held* that, under these circumstances, the firm creditors were entitled, under section 36, of the act of 1867, to share in the individual estate pari passu with individual creditors.]

[In the matter of A. M. Slocum, a bankrupt.]

By JOHN L. EDWARDS, Register:

At the second and third meetings of creditors in the above bankruptcy, certain questions arose in relation to the distribution of the estate, which I am requested by the creditors to report to said court for determination. On the 5th day of October, 1878, P. P. Pitkin, assignee in said bankruptcy, sold, as the property of the copartnership, one horse for $130, one carriage for $65, and one harness for $10,—making in all the sum

1 [Not previously reported.]
2 [Affirming Case No. 12,951.]
3 [Affirmed in Case No. 12,950.]

of $205. It was claimed before me, at said meeting of creditors, on the coming in of the assignee's account, by certain creditors, that said horse, carriage, and harness were not the property of the copartnership, but that they belonged to the individual estate of A. M. Slocum, one of the bankrupts. I find that, soon after the proceedings in bankruptcy were instituted, and after the election of the assignee, certain of the creditors, through their attorney, C. W. Porter, Esq., claimed that said property belonged to the copartnership estate, and it was also claimed by J. C. Slocum, one of the bankrupts, that he was the owner of said property, and that it belonged to his individual estate. And the said A. M. Slocum also claimed it as his property, and that it belonged to his individual estate, and also claimed that the assignee should set out the horse to him as exempt property, but the assignee declined to do this, and claimed that said property belonged to the copartnership estate, and as such he sold it as above stated, and placed the proceeds as assets to the copartnership estate.

A full hearing was had before me in relation to which estate said property belonged, whether to the copartnership estate, or to the estate of A. M. Slocum, no claim being made at the hearing that said property belonged to the individual estate of J. C. Slocum. I find, from the evidence introduced before me, that the property, at the time of the bankruptcy, belonged to and was the property of A. M. Slocum, individually, and as such belonged to the individual estate of A. M. Slocum, one of the bankrupts, and I have directed the assignee to place the proceeds of said sale to the assets of A. M. Slocum, in his individual estate,—to which decision and order of the register, Mr. Wing, attorney for certain of the creditors, objected. Should the finding of the register be sustained, there will remain, as returned by the assignee, $124.25 of copartnership estate, under circumstances hereinafter detailed. Should the register's finding be set aside, there will be $329.25 of the copartnership assets, subject to modification by facts hereinafter stated. The assets of the estate of A. M. Slocum, before deducting expenses of the bankruptcy, amount to $5,105.22, including the $205 above named, which I have ordered placed to A. M. Slocum's estate, as above stated. No claims have been proven against J. C. Slocum, and he has no individual estate.

The assignee incurred expenses in the state of New York, in endeavoring to collect claims due to the copartnership solely, to the amount of $270.65. From this undertaking he received the said sum of $124.25. The amount sought to be recovered in the state of New York was quite large, amounting to many thousands of dollars. He failed to prosecute his claims there for want of funds, and only obtained from this

undertaking said $124.25, which, it will be seen, was far less than the expenses incurred in getting it. A question arose before me whether the copartnership estate should bear the burden of the above-named expenses in New York, and thus absorb the $124.-25, or whether these expenses should be mingled with the other expenses of the bankruptcy, and all the expenses of the bankruptcy, including those in New York, above named, be deducted from the total amount of assets of both estates, and thus leave the net proceeds of each estate for distribution among the creditors of the estates, respectively. Should the whole of the expenses, including those in New York, be deducted from the total assets of both estates, some $60 or $70 would remain of the copartnership estate for distribution. If the copartnership estate bears the burden of the expenses in New York, as above stated, then there will be nothing of the copartnership estate for distribution, and the copartnership creditors, in that event, as I understand, would be entitled to come in and share in the estate of A. M. Slocum pari passu with the creditors of the individual estate of said A. M. Slocum: but, if the expenses in New York are placed with the other expenses of the bankruptcy, and as a part thereof, then there will be a small sum for distribution in the copartnership estate to copartnership creditors, and in that event the copartnership creditors would not share in the individual estate of A. M. Slocum.

The question involved depends, as it seems to me, upon the construction to be given to section 36 of the bankrupt act [of 1867 (14 Stat. 534)], which is the same as section 5121 of the General Statutes. This section has been discussed in the case of In re McEwen [Case No. 8,783]; also in Re Smith [Id. 12,987]. In the case of In re McEwen, Judge Hopkins refers to Story, Partn. § 380, as follows: "If there is any joint estate, however small it may be, if it is an available joint fund, and not purely a nominal joint fund, then the joint creditor is excluded. For example, if the joint fund is absolutely worthless, from the expenses of any attempt to get it in, or if it is pledged beyond its real value, it will be deemed a nullity." Judge Hopkins further says, in the same case: "I think this language plainly indicates that a joint fund, to exclude the firm creditors, must be beneficial to them. If it costs more than it comes to to get it, it is in no sense an available joint fund within the authorities." It is said by the lord chancellor in Ex parte Peake, 2 Rose, 54, where the answer to the petition of the firm creditors was that there were joint effects of £1. 11s. 6d., "that joint effects to the value of five pounds or five shillings would be an answer to the application, but if the property alleged to exist was in such a situation that any attempt to

bring it within the reach of the joint creditors must be deemed a desperate, or in point of expense, an unwarrantable, attempt, that would authorize a departure from the rule, and allow said creditors to prove notwithstanding such property."

From the facts above stated, the register decides that the firm creditors are entitled to share pari passu with the individual creditors of A. M. Slocum in his individual estate.

Certain creditors, by their attorney, J. A. Wing, having excepted to the rulings of the register, the questions arising upon this report are referred to the district court for adjudication. All which is respectfully submitted.

WHEELER, District Judge. Decision of register, in all respects, approved.

[The decision of this court was affirmed, upon review, by the circuit court. Case No. 12,950.]